01

02

03

04

05
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
06
AT SEATTLE

07 KARYN BROBYSKOV,                              )
                                                 )   CASE NO. C14-1552-RAJ
08        Plaintiff,                             )
                                                 )
09        v.                                     )
                                                 )   ORDER RE: SOCIAL SECURITY
10 CAROLYN W. COLVIN, Acting                     )   DISABILITY APPEAL
   Commissioner of Social Security,              )
11                                               )
          Defendant.                             )
12 _____      )

13          Plaintiff Karyn Brobyskov proceeds through counsel in her appeal of a final decision

14 of the Commissioner of the Social Security Administration (Commissioner).   The

15 Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a

16 hearing before an Administrative Law Judge (ALJ).   Having considered the ALJ's decision,

17 the administrative record (AR), and all memoranda of record, this matter is REVERSED and

18 REMANDED for further proceedings.

19                          **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1959.[1]   She completed high school and one year of

21
   _____
22          [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule
   of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic

   ORDER RE: SOCIAL SECURITY
   DISABILITY APPEAL
   PAGE -1

01 college.  (AR 377.)  She has worked as a waitress, an automotive accessories salesperson, a

02 flagger, and an industrial cleaner.  (AR 20, 526.)

03      Plaintiff applied for DIB and Supplemental Security Income (SSI) on September 14,

04 2010.  (AR 232-44.)  The applications were denied.  (AR 65-76, 77-88.)  Upon

05 reconsideration, Plaintiff was granted SSI with an onset date established as September 14,

06 2010, which was her filing date.  (AR 130.)  But, because her date of last insured (DLI) was

07 December 31, 2009, her DIB was again denied.  (AR 102-109.)  Plaintiff timely requested a

08 hearing. (AR 167-68.)

09      On April 25, 2012, ALJ Ilene Sloan held a hearing in Seattle, Washington taking

10 testimony from Plaintiff, and a vocational expert.  (AR 30-62.)  On May 11, 2012, the ALJ

11 issued a decision finding that Plaintiff was not disabled prior to her DLI.  (AR 11-22.)  The

12 Appeals Council denied review.  (AR 1-5.)  Plaintiff timely appealed.  The parties agreed to a

13 stipulated remand.  (AR 577.)  The Appeals Council vacated the ALJ's decision and

14 remanded for further proceedings.  (AR 590-92.)

15      ALJ Sloan conducted a new hearing on July 16, 2014, but heard no additional

16 testimony.  (AR 515, 536-40.)  On July 24, 2014, the ALJ issued a decision once again

17 finding Plaintiff not disabled before her DLI.  (AR 515-528.)  This decision is now the final

18 decision of the Commissioner.

19                              **JURISDICTION**

20      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §

21 ──────────────────────────────────────────────

Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United

22 States.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -2

01 | 405(g).

02 | **DISCUSSION**

03 |      The Commissioner follows a five-step sequential evaluation process for determining

04 | whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

05 | must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff had

06 | not engaged in substantial gainful activity since her amended onset date of May 1, 2009, and

07 | established her DLI as December 31, 2009.  (AR 518.)  At step two, it must be determined

08 | whether a claimant suffers from a severe impairment.  The ALJ found Plaintiff's cognitive

09 | disorder NOS, degenerative arthritis of the left knee, status-post strokes, and epilepsy to be

10 | severe impairments.  (AR 518.)  Step three asks whether a claimant's impairments meet or

11 | equal a listed impairment.  The ALJ found that Plaintiff's impairments did not meet or equal

12 | the criteria of a listed impairment. (AR 518-20.)

13 |      If a claimant's impairments do not meet or equal a listing, the Commissioner must

14 | assess residual functional capacity (RFC) and determine at step four whether the claimant has

15 | demonstrated an inability to perform past relevant work.  The ALJ found Plaintiff capable of

16 | performing medium work with additional limitations: she would need to take seizure

17 | precautions including avoiding exposure to moving parts or blade, unprotected heights, large

18 | bodies of water, vats, and liquids, and use of motorized vehicle.  She would have the ability to

19 | understand, remember, and carry out simple one and two-step instructions, involving no more

20 | than SVP 2.  She can maintain concentration and attention for two hour intervals before

21 | requiring a 15 minute break to refocus.  She can accept instruction from supervisors and work

22 | with co-workers.  However, dealing with the general public should not be an essential element

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -3

01  of the task, although incidental contact would not be precluded.   (AR 520.)   With that

02  assessment, the ALJ found Plaintiff able to unable to perform her past relevant work.   (AR

03  526.)

04       If a claimant demonstrates an inability to perform past relevant work, the burden shifts

05  to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

06  an adjustment to work that exists in significant levels in the national economy.   Based on

07  testimony from a vocational expert, the ALJ found Plaintiff able to perform the representative

08  occupations of hand packager, small products assembler, and inspector/hand packager.   (AR

09  527.)  Therefore, the ALJ found Plaintiff not disabled prior to her DLI of December 31, 2009.

10  (AR 528.)

11       This Court's review of the ALJ's decision is limited to whether the decision is in

12  accordance with the law and the findings supported by substantial evidence in the record as a

13  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

14  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

15  reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

16  F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

17  supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

18  F.3d 947, 954 (9th Cir. 2002).

19       Plaintiff argues the ALJ erred by (1) improperly evaluating the opinion of examining

20  physician Dan Phan, M.D., (2) failing to properly determine the onset date of her disability,

21  (3) improperly discounting her opinion, and (4) rejecting lay testimony without germane

22  reasons.  Dkt 17-1 at 1. According to Plaintiff, these errors should be remedied by a remand

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -4

01   for payment of benefits, not additional proceedings.  Dkt. 17-1 at 18.  The Commissioner

02   argues that the ALJ's decision is free of legal error, supported by substantial evidence and

03   should be affirmed.  Dkt. 19 at 13.

04                                              Medical Evidence

05         Plaintiff contends that the ALJ failed to properly evaluate the opinion of examining

06   physician Dan V. Phan, M.D.  Dr. Phan evaluated Plaintiff in May 2009.  (AR 384-86.)  In

07   addressing Plaintiff's functional limitations, Dr. Phan stated, "[w]ith the knee problem, she

08   should avoid works requiring prolonged walking, and frequent kneeling and squatting."  (AR

09   386.)  In her first decision, the ALJ gave this opinion "great weight" and assessed the RFC at

10   the medium exertion level.  (AR 16-17.)  The Appeals Council determined that this

11   assessment was problematic:

> The Administrative Law Judge assigned "great weight" to the opinion of Dan
> V. Phan, M.D.  However, the Administrative Law Judge found the claimant
> capable of performing medium work despite Dr. Phan's opinion that the
> claimant should avoid prolonged walking due to her left knee impairment.
> "Medium" exertional work requires standing or walking, off and on, for a total
> of approximately six hours in an eight-hour workday.  (AR 590.)

The Appeals Council directed the ALJ to resolve this inconsistency on remand.  (AR 590.)

         In her second decision, the ALJ accorded "partial" weight to Dr. Phan's opinion and

acknowledged his assessment that Plaintiff needed to avoid prolonged walking.  (AR 524.)

According to the ALJ, "[w]hile the claimant may not be able to stand and/or walk for an

entire 8-hour day, I find that Dr. Phan's examination findings support a conclusion that she

could stand and/or walk for 6 hours in an 8-hour workday."  (AR 524.)  In support of this

finding, the ALJ noted that Dr. Phan's examination showed full flexion and extension of the

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -5

01 knee; no redness, swelling, or deformity; full motor strength, normal gait, and no need for an

02 assistive device; Plaintiff could walk about one mile, and denied any limitations on standing.

03 (AR 524.)

04      The ALJ only gave "partial" weight to Dr. Phan's opinion in this decision, but failed

05 to provide any reason to discount the opinion. This is error.  The ALJ must provide "clear and

06 convincing" reasons for rejecting the uncontradicted opinion of a treating physician. *Lester v.*

07 *Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating physician's opinion is

08 contradicted, that opinion "can only be rejected for specific and legitimate reasons that are

09 supported by substantial evidence in the record."  *Id*. at 830-31.  Here, the ALJ failed to

10 provide any reason for giving only "partial" weight to Dr. Phan's opinion.

11      Furthermore, the ALJ once again found Plaintiff capable of medium work without

12 reconciling that exertion level with Dr. Phan's opinion.  Medium exertion "require[s] the

13 worker to stand or walk most of the time."  Social Security Ruling 83-14.  The ALJ provides

14 no explanation as to how an opinion that specifically noted the need to avoid "prolonged"

15 walking supports a medium exertional level requiring six hours of walking/standing. SSR 83-

16 10.  The Commissioner urges the Court that "because medium work involves alternating

17 between walking and standing 'off and on' for six hours a day, Plaintiff has not shown that it

18 actually requires 'prolonged walking.'"  Dkt. 19 at 3.  But, the ALJ did not differentiate

19 between standing and walking in the RFC.  Without additional limitations, "medium exertion"

20 could include a majority of walking over the course of six hours, which would be inconsistent

21 with Dr. Phan's opinion.  Thus, ALJ failed to resolve the inconsistency highlighted by the

22 Appeals Council, and once again established an RFC seemingly at odds with Plaintiff's

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -6

01  assessed capabilities.  This results in an RFC that may not properly reflect Plaintiff's true

02  capacity and undermines the ALJ's step five finding that Plaintiff can perform gainful work.

03      The Commissioner bears the burden at step five to show that Plaintiff can perform

04  gainful work.  *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  To meet this burden, the

05  ALJ solicited testimony from a VE through hypothetical questions.  *Id*. at 1100-1101, (AR 54-

06  55.)  "Hypothetical questions posed to the vocational expert must set out *all* the limitations

07  and restrictions of the particular claimant."  *Embrey v. Bowen*, 849 F.3d 418, 422-23 (9th Cir.

08  1988).  When the hypothetical is not supported by the record and does not include all the

09  limitations, the testimony of the VE has no evidentiary value.  *Id*.  In this case, the VE was

10  posed a hypothetical with medium exertion level.  (AR 54-55.)  Because the VE identified

11  jobs compatible with this RFC, which may not fully account for Plaintiff's need to avoid

12  prolonged walking, the testimony has no evidentiary value and the case must be reversed.

13                                    Onset Date

14      To receive DIB, a claimant "must prove that she was either permanently disabled or

15  subject to a condition which became so severe as to disable her prior to the date upon which

16  her disability insured status expires."  *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

17  In this case, Plaintiff's DLI was December 31, 2009.  (AR 65.)  The ALJ found that Plaintiff

18  "retained the cognitive ability to perform simple, 1 to 2-step tasks before December 31,

19  2009," and she was not disabled prior to her DLI.  (AR 526, 528.)  Plaintiff alleges legal error

20  because the ALJ failed to call a medical expert to establish her onset date.  The Court agrees.

21      The ALJ relied heavily upon a May 2009 psychological evaluation conducted by

22  Rodger I. Meinz, Ph.D.  (AR 525, 376-82.)  Dr. Meinz reported that Plaintiff was anxious,

01  fearful, and embarrassed about her memory problems. (AR 379.) Plaintiff was oriented, but

02  had to look at her referral sheet to remember the day of the month. (AR 379.) She could

03  recall three out of three objects after five minutes; recall six digits forward but only three

04  digits backward; and slowly completed serial threes from 20 by using her fingers to count.

05  (AR 380.) Her memory scores ranged between average, borderline, and extremely low. (AR

06  380.) These scores "corroborate her self-report" of poor memory since suffering the two

07  strokes. (AR 381.) Dr. Meinz concluded that Plaintiff "might be capable of light bench

08  assembly…where any memory problems could be accommodated by the routine nature of the

09  work. Whether she could perform at a competitive rate at such work is unknown." (AR 382.)

10  The ALJ summarized Dr. Meinz' opinion:

11          Dr. Meinz opined in May 2009 that the claimant could retain the ability to
           absorb and perform simple sets of auditory and visual data. Dr. Meinz added
12          that the claimant might be capable of light bench assembly work, where her
           memory problem could be accommodated by the routine nature of her work.
13          (AR 525.)

14  The ALJ accorded this opinion significant weight because Dr. Meinz conducted psychometric

15  and mental status testing in addition to an interview. (AR 525.)

16          The ALJ accepted Dr. Meinz' opinion over Plaitniff's treating physician, Sam

17  Eggertsen, M.D. Dr. Eggertsen began seeing Plaintiff in November 2009. (AR 489.) He

18  completed a physical evaluation on January 25, 2010 in which he asserted that her main issues

19  were cognitive. (AR 425-28.) He opined that her cognitive deficits are "marked" and rated

20  them as severe. (AR 427.) He arrived at this conclusion based on results showing her unable

21  to remember three objects after three minutes, draw a clock face accurately, and subtract

22  seven from one hundred. (AR 426.) The ALJ gave minimal weight to Dr. Eggertsen's

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -8

01  opinion because he based it on an abridged mental status examination.  (AR 525.)

02      Generally, medical opinions of treating physicians are accorded special weight.

03  *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  "The ALJ must either accept the

04  opinions of…treating physicians or give specific and legitimate reasons for rejecting them."

05  *Id.* at 422 n.3. Here, the ALJ gave greater weight to Dr. Meinz' opinion, because he

06  conducted significantly more testing and "considered claimant's work history and vocational

07  certifications after her last stroke."  (AR 525.)   But, Dr. Eggertsen conducted objective

08  testing, in the form of the abbreviated mental status exam, and provided the results.  Dr.

09  Eggertsen gave his assessment and specifically noted the objective results that led to his

10  conclusions.  (AR 425-28.)

11      Dr. Eggertsen gave his opinion eight months after Dr. Meinz opined that Plaintiff

12  could possibly perform light bench work, and less than one month after her DLI.  (AR 382,

13  425.) Given the progressive nature of Plaintiff's dementia and the proximity in time to her

14  DLI, Dr. Eggertsen's assessment was the most relevant to her actual functional level at her

15  DLI.  The timing of the opinion and the nature of the treating physician relationship give

16  weight to Dr. Eggertsen's assessment.

17      As a result of the opinions given by Drs. Meinz and Eggertsen, Plaintiff's onset date is

18  unclear. When evidence of the onset of mental impairment is ambiguous, "the ALJ should

19  determine the date based on an informed inference. Such an inference is not possible without

20  the assistance of a medical expert."  Morgan v. Sullivan, 945 F.2d 1079, 1082-83 (9th Cir.

21  1991).   Under Social Security Regulation ("SSR") 83-20, determination of an onset date

22  requires a "legitimate medical basis" which is established by calling a medical advisor at the

01  hearing.

02  How long the disease may be determined to have existed at a disabling level of
    severity depends on an informed judgment of the facts in a particular case.
03  This judgment, however, must have a legitimate medical basis.  At a hearing,
    the administrative law judge (ALJ) should call on the services of a medical
04  advisor when onset must be inferred.

05

06  SSR 83-20 has been interpreted to *require* a medical advisor if the "medical evidence is not

    definite concerning the onset date and medical inferences need to be made."  *Delorme v.*
07
    *Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).    In such cases, the ALJ must call a medical
08
    expert to assist in determining the onset date.  *Armstrong v. Comm'r of Soc. Sec. Admin., 160*
09
    *F.3d 587, 590 (9th Cir. 1998).*
10
11          In this case, the onset date is unclear.  In May 2009, Dr. Meinz opined that Plaintiff

12  "might" be capable of light bench assembly, but was unsure if she could perform at a

13  competitive rate. (AR 382.) By January 2010, less than one month after DLI, Plaintiff's

14  treating physician found her to have severe cognitive deficiencies.  In a case, such as this,

15  where onset date is ambiguous but critical to the claim, the ALJ was required to call a medical

16  expert to make the necessary medical inferences and establish the onset date.   Failure to

17  obtain assistance from a medical expert was legal error.  Because onset date is central to the

18  DIB determination, the error in establishing that date was harmful and requires reversal.

19                                    Plaintiff's Credibility

20          The ALJ found that Plaintiff's statements concerning the intensity, persistence, and

21  limiting effects of her symptoms were not entirely credibility.  (AR 521.) The ALJ cited the

22  Plaintiff's activities of daily living, work history, and lack of objective medical evidence as

01  reasons to discount her testimony.  (AR 522-23.)  Plaintiff contends that the ALJ improperly

02  rejected her testimony.

03      The ALJ is responsible for determining credibility.  *Andrews v. Shalala*, 53 F.3d

04  1035, 1039 (9th Cir. 1995).  Unless there is affirmative evidence showing that the claimant

05  is malingering, the ALJ must provide clear and convincing reasons for rejecting the

06  evidence.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  The ALJ "may not discredit

07  the claimant's testimony as to subjective symptoms merely because they are unsupported by

08  objective evidence."  *Id.*  However, "[in] determining credibility, an ALJ may engage in

09  ordinary techniques of credibility evaluation, such as considering claimant's reputation for

10  truthfulness and inconsistencies in claimant's testimony."  *Burch v. Barnhart*, 400 F.3d 676,

11  680 (9th Cir. 2005).  Additionally, the ALJ may consider a claimant's work record and

12  observations of physicians and other third parties regarding the nature, onset, duration, and

13  frequency of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

14      The ALJ stated that Plaintiff's activities of daily living prior to her DLI are not

15  consistent with her allegations of disability. "[T]he claimant told Dr. Phan and Dr. Meinz that

16  she lived alone and that she was able to independently perform her activities of daily living,

17  including showering daily, preparing her own meals, and keeping her apartment clean."  (AR

18  523.)   Plaintiff contends that these activities do not support an adverse credibility

19  determination.

20      "Daily activities may be grounds for an adverse credibility finding 'if a claimant is

21  able to spend a substantial part of his day engaged in pursuits involving the performance of

22  physical functions that are transferable to a work setting.'"  *Orn v. Mastrue*, 495 F.3d 625,

01  639 (9th Cir. 2007)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (Cir. 9th 1989)).  Daily activities

02  may also have bearing on credibility if they are inconsistent with claimed limitations.

03  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  In this case, Plaintiff's ability to

04  perform the basic tasks of showering, preparing her meals, and keeping her house clean is not

05  inconsistent with her knee pain or mental impairments.  Nor are these activities transferable to

06  a work setting.  *Orn*, 495 F.3d at 639.

07         Furthermore, the ALJ mischaracterizes Plaintiff's activities of daily living from the

08  period after her DLI.  The ALJ found that "claimant's more recent activities suggest that her

09  functioning was likely greater than alleged prior to her date last insured." (AR 523.)  The

10  ALJ elaborated:

11         she reported living with a disabled friend, whom she helped get dressed and
           reminded to take medications.  She stated that she could care for her personal
12         hygiene and grooming, prepare simple meals, attends appointments, go out
           alone, take the bus, and shop for groceries.  At the hearing she testified that she
13         was able to do her own grocery shopping, but limited her shopping to one store
           that was close to her home.  She testified that she lives alone and is able to care
14         for herself and her apartment.  (AR 523.)

15  But, this description of Plaintiff's ability to care for herself omits several key details.  For

16  example, Plaintiff limited her shopping to a single location because she knew how to walk to

17  that store and back and would not get lost.  (AR 43.)   At the store, she often had difficulty

18  remembering what she needed to purchase, so she would buy "a little bit of everything. Like

19  lots of soups." (AR 43.)   She cooked only basic foods using the microwave because she

20  would forget that she had put food in the oven. (AR 41.)  And, although Plaintiff took the bus,

21  she would become confused and need to call someone or get assistance from the bus driver.

22  (AR 42.)  She would forget which bus she needed or get off at the wrong location.  (AR 42.)

01        As seen by these examples, Plaintiff ability to perform basic activities was hampered

02   by her mental impairment.  Her recent functioning does not demonstrate greater capacity prior

03   to her DLI.  The ALJ's finding that her ability to accomplish these activities negated her

04   credibility was not supported by substantial evidence in the record.

05        Similarly, the ALJ's depiction of Plaintiff's prior work history is unsupported by the

06   evidence in the record.  The ALJ cited Plaintiff's work history to discredit her testimony.

07        [A]fter her second stroke, the claimant was able to return to substantial fanciful
          activity as a sales person at Sears, where she worked from 1996 through
08        2002…She later worked at Labor Ready, doing temporary jobs as a flagger and
          performing pickup and cleanup, from 2006 through 2008.  At the hearing, she
09        testified that she was able to follow simple instructions and to perform simple
          tasks without any issues when she worked at Labor Ready. Her struggles were
10        primarily with performing jobs that required her to follow and perform
          complex instructions.  (AR 523)

11   But, this description of Plaintiff's work history ignored that Plaintiff had difficulty performing

12   and keeping several jobs.  In 2003, she lost her long-time job at Sears automotive because she

13   could not perform her tasks quickly enough, despite trying her hardest.  (AR 40.)  She was

14   fired from a restaurant hostess position and a retail job because she could not remember

15   important codes.  (AR 39-40.)  And when performing temporary work with Labor Ready,

16   employers often sent her back because she became disoriented at job sites.  (AR 38-39.)  "I

17   was just supposed to clean certain rooms before they got into another project of that room,

18   and then I'd get lost in the room trying to get back to the main place we all met.  And I'd just

19   be wandering."  (AR 39.)  Plaintiff testified that she could perform the clean up tasks

20   assigned, but anything more complicated and the employers "would get nervous" and send

21   her back to Labor Ready. (AR 39, 47.)  All of these employment struggles occurred prior to

22

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -13

01  Plaintiff's DLI.   Rather than support the ALJ's credibility determination, the record

02  demonstrates significant functional difficulties consistent with Plaintiff's alleged disability.

03         Finally, the ALJ insinuated that the lack of objective medical evidence undermined

04  Plaintiff's testimony. (AR 521-23.) But, as noted above, the ALJ "may not discredit the

05  claimant's testimony as to subjective symptoms merely because they are unsupported by

06  objective evidence."   *Lester*, 81 F.3d at 834.   Here, the ALJ's reliance on Plaintiff's

07  activities of daily living and work history is unsupported by the record.   The dearth of

08  medical evidence is the only remaining reason to discount Plaintiff's testimony and does not

09  provide legally sufficient reason to discredit Plaintiff.   The ALJ failed to provide clear and

10  convincing reasons based on substantial evidence in the record to reject Plaintiff's

11  testimony.   Reversal is required.

<u>Lay Witness Testimony</u>

13     Plaintiff's mother, Margaret Faltys, provided a third party function report in

14  November 2010 that detailed Plaintiff's difficulties.   (AR 312-19.)   "Descriptions by friends

15  and family members in a position to observe a claimant's symptoms and daily activities have

16  routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th

17  Cir. 1987). A germane reason is required to reject such evidence. *Dodrill v. Shalala*, 12 F.3d

18         Plaintiff alleges that the ALJ improperly rejected this testimony because Plaintiff had

19  demonstrated a functional ability to work, and Ms. Faltys did not differentiate between

20  Plaintiff's functioning before and after her DLI.   Dkt. 17-1 at 18.   However, this argument

21  references the reasoning provided in the first ALJ decision, since vacated by the Appeals

22  Council.   (AR 20, 590-92.)   Plaintiff's argument is inapplicable to the current decision.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -14

01                                        <u>Disposition</u>

02          This case is rife with harmful errors requiring reversal.  Plaintiff asserts that the proper

03  remedy is remand for award of benefits.  The Court may remand for an award of benefits

04  where:

05          the record has been fully developed and further administrative proceedings
            would serve no useful purpose; (2) the ALJ has failed to provide legally
06          sufficient reasons for rejecting evidence, whether claimant testimony or
            medical opinion; and (3) if the improperly discredited evidence were
07          credited as true, the ALJ would be required to find the claimant disabled on
            remand.

08
    *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  The Court abuses its discretion by
09
    remanding for further proceedings where the record establishes no basis for serious doubt that
10
    the claimant is in fact disabled.  *Id*. at 1023.  However, remand for award of benefits occurs in
11
    rare circumstances.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir.
12
    2014).
13
            Although this case has already been remanded once and has been pending for several
14
    years, this is not the rare circumstance requiring remand for benefits.  The main issue remains
15
    whether Plaintiff was disabled prior to her DLI.  As discussed earlier, a medical expert is
16
    required when "medical evidence is not definite concerning the onset date and medical
17
    inferences need to be made."  *Delorme*, 924 F.2d at 848.  This Court is no more capable than
18
    the ALJ of making the required medical inferences necessary to properly establish Plaintiff's
19
    onset date.
20
            The case must be remanded for further proceedings.  On remand, the ALJ should take
21
    medical expert testimony to assist in the establishment of Plaintiff's disability onset date.
22

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -15

01    Additionally, the ALJ should reconsider Dr. Phan's opinion, give weight to Plaintiff's

02    testimony, further develop the record as necessary, reassess the RFC, and proceed with steps

03    four and five of the sequential evaluation process as needed.

04    **<u>CONCLUSION</u>**

05         For the reasons set forth above, this matter is REVERSED and REMANDED for

06    further proceedings.

07         DATED this 27th day of July, 2015.

08

09

10                                 The Honorable Richard A. Jones

11                                 United States District Judge

12

13

14

15

16

17

18

19

20

21

22

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -16